**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT** | § | |
| **OPPORTUNITY COMMISSION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION V-07-36** |
| | § | |
| **COASTAL TRANSPORTATION** | § | |
| **SERVICES INC., d/b/a COASTAL** | § | |
| **MEDICAL SERVICE OF TEXAS,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant's Motion to Dismiss (dkt. # 8). After considering the motion, response and applicable law, the Court is of the opinion that the motion should be DENIED.

### Factual and Procedural Background

Coastal Transportation Services ("CTS" or "Defendant"), a Texas corporation operating primarily in Victoria County, Texas, provides local, non-emergency transportation services for people to and from nursing homes, hospitals, doctors' offices, and the like. Georgia Lale filed a charge of discrimination with the EEOC against Defendant on June 17, 2006 claiming sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). 42 U.S.C. § 2000e *et seq*. Following an investigation, the EEOC found reasonable cause to believe that Lale and another unnamed employee had been subjected to a sexually hostile work environment. The EEOC began conciliation efforts on September 14, 2006, and after the conciliation process reached an impasse, the EEOC filed suit on March 22, 2007.

Defendant seeks dismissal on two grounds. First, it contends it is not subject to Title VII

because it is not engaged in an industry affecting commerce.  Defendant also asserts that the EEOC violated its statutory duty to attempt conciliation in good faith before filing suit because the EEOC refused to name a class member.

### Standard of Review

Defendant's motion is styled as a motion to dismiss pursuant to Rule 12(b)(6). Both parties have, however, attached to their filings evidence outside of the pleadings, including affidavits, copies of correspondence and copies of discovery responses, thereby converting this motion to a motion for summary judgment governed by Rule 56.  *See* FED. R. CIV. P. 12(b); *Washington v. Allstate Ins. Co.*, 901 F.2d 1281 (5th Cir. 1990).  A motion for summary judgment requires the court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* FED. R. CIV. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, *Tex.*, 247 F.3d 206, 210 (5th Cir. 2001) (internal quotation marks and citation omitted).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the non-moving party." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir.2000).

A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25. The non-moving party may not rest upon mere

allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256-57 (1986). The court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Crawford*, 234 F.3d at 902.

## I.     Title VII Coverage

Defendant asserts it is not an "employer" subject to coverage under Title VII because its business is not involved in and does not affect interstate commerce. Title VII applies to an employer "engaged in an industry affecting commerce . . . ." 42 U.S.C. § 2000e(b). The term "industry affecting commerce" is defined as "any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce . . . ." *Id.* § 2000e(h). The EEOC argues that to be a covered "employer" under Title VII, Defendant need not be "an industry affecting commerce," but need only be engaged in an industry which affects commerce. The Court agrees.

Defendant's reliance on the Supreme Court's holding in *United States v. Lopez*, 514 U.S. 549 (1995), is misplaced. In *Lopez*, the Supreme Court struck down a federal statute criminalizing intrastate activity as an unconstitutional exercise of Congress's Commerce Clause power. The critical question here is not whether Title VII's regulation of employment discrimination is a valid exercise of Congress's commerce power, but whether Defendant is engaged in an industry that affects interstate commerce. Defendant does not challenge the constitutionality of Title VII, and the use of the term "affecting commerce" shows a clear congressional intent to exercise its power "to the fullest jurisdictional breadth constitutionally permissible under the commerce clause." *See Martin v. United Way of Erie County*, 829 F.2d 445, 447–48 (3d Cir. 1987) (noting the incorporation

of the definition of "affecting commerce" from the labor laws into Title VII) (quoting *N.L.R.B. v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226 (1963))). Thus, a general regulatory statute that bears a substantial relation to commerce may constrain a single entity despite its arguably minimal impact on interstate commerce, *Lopez*, 514 U.S. at 558 (citing *Maryland v. Wirtz*, 392 U.S. 183 (1968)), and the "affects commerce" standard for a particular intrastate business is very low. *See Wickard v. Filburn*, 317 U.S. 111 (1942) (finding a farmer's production of wheat for home consumption affected interstate commerce).

In this case, Defendant is a medical services company, which provides transportation services for people to and from nursing homes, hospitals and doctors' offices. Defendant maintains that because it is a local business that operates within the state of Texas, that is not "engaged in an industry affecting commerce." While it may be true that CTS only performs its services within Texas, it operates a for-profit business that is part of a much broader medical services industry. *Groome Res. Ltd., L.L.C. v. Parish of Jefferson*, 234 F.3d 192, 207 (5th Cir. 2000). The medical services industry is a large segment of the U.S. economy[1] and any participation within this industry undoubtedly has an affect on interstate commerce.

Moreover, while the services Defendant provides may occur only intrastate, many of the resources Defendant uses to operate its business involve interstate activity.[2] For example, Defendant has a contract with Detar Hospital (which is owned by Columbia Healthcare, a national hospital chain) to provide ambulance and wheelchair services for their patients. CTS also handles insurance

---

[1] *See* P.'s Resp. (dkt. # 23), Exs. 2–3 for statistics on transportation services within the medical services industry.

[2] *See id.*, Ex. 1 (Georgia Lale's Affidavit).

4

claims, requiring contacting out-of-state insurance providers by mail and telephone. Further, the United States Postal Service is regularly used to deliver checks to CTS from out-of-state insurance companies and to send Medicare, Medicaid and other insurance documentation out-of-state. Additionally, Defendant purchases supplies from vendors outside of Texas, and uses interstate highways to perform its services. Therefore, the Court concludes that Defendant is engaged in an industry affecting interstate commerce, which makes CTS a covered "employer" under Title VII.

## II.    Good Faith Conciliation

Next, Defendant contends that the EEOC violated its statutory duty to attempt conciliation efforts in good faith before filing suit because it refused to identify a class member for which it was seeking monetary compensation. Defendant argues the EEOC's conduct violated 42 U.S.C. § 2000e-5(b), and therefore, the Court should dismiss the portion of this lawsuit against Defendant filed on behalf of the unnamed party. Specifically, Defendant asserts that the EEOC's conduct created a "deliberate impediment to the Defendant exercising its right to: (1) investigate the veracity of the unnamed person's claim; (2) determine whether the unnamed person was employed by Defendant during the relevant period of time; (3) determine whether this person complained to anybody about the alleged sexual harassment; and (4) determine whether the unnamed person themselves participated in and/or instigated the alleged harassment."[3] The EEOC maintains that it attempted to conciliate with the Defendant in good faith, and that it justifiably refused to identify the other class member because she requested not to be identified during the conciliation process due to fear of retaliation.

On September 14, 2006, the EEOC notified CTS that there was reasonable cause to believe

---

[3]  D.'s Mot. to Dismiss (dkt. # 8), pp. 6–7.

5

that violations had occurred and invited CTS to join in the conciliation process.  In this letter, the
EEOC made its first offer, seeking compensatory damages for the Charging Party, as well as
punitive damages for each affected class member.[4]  In response, Defendant's counsel sought the
number and name of each class member.[5]  The EEOC informed Defendant that it had identified one
class member, but would not "identify the class member at this time, due to concern about
retaliation."[6]  The EEOC  investigator did reveal that the individual alleged she was subjected to
"inappropriate touching and unwelcome sexual remarks by the company owner."[7]  Defendant again
requested the name, but the EEOC refused to identify the person based on the same retaliation
concerns.  The EEOC assured Defendant that the class member was employed during the relevant
period and noted that it had provided "sufficient evidence to assess the class member's claim,
especially in light of the fact that the alleged harasser is the company's owner."[8]

On October 2, 2006, Defendant made a counter-proposal and requested further information
regarding the Charging Party.  The EEOC supplied the information requested and reiterated its offer.
Each party exchanged two more offers, and when it became apparent, based on the final offers of
each party, that settlement was not likely, the EEOC sent its notice of conciliation failure on
November 13, 2006.[9]  The EEOC filed suit on March 22, 2007, and on May 3, 2007, it submitted

---

[4] *Id.* Ex. 2.

[5] *Id.* Ex. 3.

[6] *Id.* Ex. 4.

[7] *Id.*

[8] *Id.* Ex. 6.

[9] *Id.* Ex. 14.

a settlement proposal to Defendant's counsel, at which time it revealed the name of Virginia Munoz, the other class member for which it was seeking compensation.  To date the Defendant has not responded to this settlement offer.

If the EEOC determines, after an investigation, that there is reasonable cause to believe that employment discrimination is occurring, the Commission shall attempt to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion before instituting a lawsuit.  42 U.S.C. § 2000e-5(b); 29 U.S.C. § 626(b).  When evaluating whether the EEOC has adequately fulfilled the conciliatory statutory requirement, the critical inquiry is the reasonableness and responsiveness of the EEOC's conduct under the circumstances. *Marshall v. Sun Oil Co. (Del.)*, 605 F.2d 1331, 1336 (5th Cir. 1979).  Because conciliation requires flexibility and responsiveness to the other party's position, what constitutes an attempt to effectuate voluntary compliance will necessarily differ from case to case.  *Id.* at 1334.  Specifically, the EEOC fulfills its statutory duty if it: (1) outlines to the employer the reasonable cause for its belief that a violation has occurred; (2) offers an opportunity for voluntary compliance; and (3) responds in a reasonable and flexible manner to the reasonable attitudes of the employer. *Id.* at 1339.

Under the circumstances outlined above, the Court finds that the EEOC acted reasonably in attempting to conciliate with Defendant.  The EEOC originally notified the Defendant that reasonable cause existed to believe that violations had occurred and identified how CTS could come into compliance by paying the damages of the Charging Party and each affected class member.  Each time Defendant's counsel requested information, the EEOC responded to each of Defendant's inquiries through a series of letters over a two month period.  Although the EEOC refused to reveal the name of the other class member, it was explicit about the parameters of the unlawful conduct,

as well as the number of victims.  *See EEOC v. Keco Indus., Inc.*, 748 F.2d 1097 (6th Cir. 1984) (finding EEOC could sue on behalf of those not specified in the conciliation process because the additional claims were merely an expansion of the charging party's same charge).  The EEOC provided sufficient information to notify Defendant of the charges of the unnamed party by disclosing that only one party, who had worked during the relevant time period, was making similar claims against the company's owner.  Therefore, the Court finds that the EEOC satisfied its statutory obligation to attempt to conciliate in good faith.

### Conclusion

For these reasons, the Court finds that the Defendant's Motion to Dismiss (dkt. #8) (as converted into a motion for summary judgment) should be DENIED.

It is so ORDERED.

SIGNED this 20th day of February, 2008.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE